UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **EXPRESS SCRIPTS, INC.** )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>**WALGREEN CO.,** )<br>)<br>**Defendant.** ) | Case No. 4:08cv1915 TCM |

## MEMORANDUM AND ORDER

This matter is before the Court[1] on the motion of plaintiff, Express Scripts, Inc. ("Express Scripts"), to dismiss the conversion count of the counterclaims of defendant, Walgreen Co. ("Walgreen").[2]

### Background

For purposes of the pending motion, the following are assumed to be true.

On August 26, 2005, Express Scripts and Walgreen entered into an agreement whereby Walgreen was to provide pharmacy services to eligible members enrolled in pharmacy benefit plans managed by Express Scripts. (Countercl. ¶ 8-9.) Their agreement was automatically renewable at the end of each year for successive one-year terms. (Id. ¶ 19.) In 2008, Express Scripts notified Walgreen that it did not intend to renew the agreement for the following year. (Id. ¶ 20.) The parties then began negotiating a possible

---

[1]The case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

[2]Express Scripts also sought to strike Walgreen's prayer for an accounting in its breach of contract counterclaim. Walgreen has since voluntarily dismissed this request.

new agreement. (Id.) This new agreement became effective on January 1, 2009, and its terms are not at issue in the counterclaims. (Id.)

Alleging that Walgreen was improperly substituting, and being reimbursed, for a more expensive form of a drug, Express Scripts initiated this three-count action for declaratory relief; breach of contract; and unjust enrichment. Walgreen responded with a three-count counterclaim, including allegations that Express Scripts conducted itself in "an improper" manner to "wrongfully benefit itself" at Walgreen's expense and to extract concessions from Walgreen in the parties' 2008 negotiations. (Id. ¶ 21.) This improper conduct included conducting "'audits'" which Express Scripts allegedly had no right to conduct and "abus[ing] and exploit[ing] the minimal audit rights it did have." (Id. ¶ 22.) These rights provided for two types of audits: (1) on-site audits and (2) requests from corporate contact only of copies of prescriptions. (Id. ¶ 24-26.) Walgreen alleges that Express Scripts engaged in improper audits not provided for in their agreement and then, based on these audits, "recouped and clawed back millions of dollars" belonging to Walgreen.[3] (Id. ¶¶ 28-37, 40, 56-57.) This recoupment is alleged to be a breach of their agreement. (Id. ¶ 41.) Additionally, Express Scripts is alleged to have conducted telephone audits and contacted individual pharmacies in breach of the express terms of the agreement. (Id. ¶ 51.)

The net result of the "claw back" scheme is that money previously paid to and properly belonging to Walgreen was improperly taken and retained by Express Scripts based

---

[3]Under the agreement, Express Scripts remitted payments to Walgreen twice a month for the costs of prescriptions dispensed by Walgreen to the plan members. (Id. ¶ 18.)

on audits conducted by Express Scripts in breach of its agreement with Walgreen. (Id. ¶¶ 57, 70.)

In its counterclaim for conversion, Count III, Walgreen alleges that Express Scripts has "wrongfully assumed unauthorized control of over $22.7 million belong to Walgreen[]" and Walgreen wants it back. (Id. ¶ 75-76.) Specifically, Express Scripts has failed to comply with Walgreen's demand for the return of $7,826,752 that Express Scripts had improperly assumed control over as of December 1, 2008; has failed to return the $5,301,586 earlier wrongfully deducted from remittance payments to Walgreen; and "has converted additional monies of at least $9,627,056." (Id. ¶ 77-78.) Walgreen requests that Express Scripts be ordered to return the $22.7 million in "wrongfully converted funds." (Id. at 36.)

Express Scripts moves to dismiss the conversion counterclaim for failure to state a claim. See Fed.R.Civ.P. 12(b)(6).

## **Discussion**

"'While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" **Benton v. Merrill Lynch & Co.**, 524 F.3d 866, 870 (8th Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" **Ashcroft v. Iqbal**, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." **Id.** (citing Twombly, 550 U.S. at 556). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." **Id.** "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" **Id.** (quoting Twombly, 550 U.S. at 557). This standard reflects "two working principles." **Id.** "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." **Id.** "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." **Id.** at 1950. This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." **Id.**

With this standard in mind, the Court turns to a resolution of the pending motion, beginning with the parties' dispute about a choice of law provision in their agreement ("the Agreement").

Choice of Law. That Agreement[4] provides that: "This Agreement shall be construed and governed in all respects according to the internal laws in the State of Missouri." (Am. Compl. Ex. A § 9(E).) Express Scripts argues that this provision requires that Walgreen's counterclaim for conversion, a tort, be governed by Missouri law. Walgreen disagrees, contending that the provision does not apply to its tort claim because that claim does not require the Court to construe the Agreement. The Court disagrees with Walgreen.

---

[4]When ruling on a motion to dismiss, the Court may consider materials that are attached to the complaint. **Owen v. General Motors Corp.**, 533 F.3d 913, 918 (8th Cir. 2008). The parties' Agreement was attached as an exhibit to the amended complaint.

In support of its position, Walgreen cites **Inacom Corp. v. Sears, Roebuck and Co.**, 254 F.3d 683 (8th Cir. 2001). The provision at issue in that case reads that the "'Agreement shall be *governed by and construed* in accordance with the law of the State of Illinois, *as applied to contracts* made and to be performed solely within such state, without regard to conflict or choice of law rules, provisions or principles.'" **Id.** at 687 (second emphasis added). Although the fraudulent concealment claim at issue "arose out of the circumstances surrounding the *formation* of the contract," the court held that this "narrow contractual language" was "not broad enough to govern the choice of law" for the claim, which was a tort. **Id.** (emphasis added). This provision is more narrowly drawn than the one in the instant case. The provision at issue here does not confine itself to governing and construing the contract, but rather provides that the agreement is to "be construed and governed *in all respects*" in accordance with Missouri law. (Am. Compl. Ex. A § 9(E).)

In support of its position, Express Scripts cites **Greenwood v. Sherfield**, 895 S.W.2d 169 (Mo. Ct. App. 1995). In that case, the question was whether a claim for tortious interference with contract must be submitted to arbitration in accordance with the parties' agreement providing for such submission of any controversy or claim arising out of their agreement. **Id.** at 174. Noting that "[t]he relationship between the tort claim and the contract is not satisfied simply because the dispute would not have arisen absent the existence of the contract between the parties[,]" the court held that arbitration was "compelled where a tort claim arises directly out of a dispute regarding the terms of the parties contractual relationship or where the statements giving rise to a tort claim are integrally linked to the contractual relationship between the parties." **Id.** at 174-75 (internal citations omitted). See

also **Hudson v. ConAgra Poultry Co.**, 484 F.3d 496, 500, 502 (8th Cir. 2007) (affirming a construction of an arbitration cause in a contract as encompassing contract-related tort claims; the clause provided that "the laws of Arkansas . . . shall exclusively apply and govern this agreement").

In **Holden Farms, Inc. v. Hog Slat, Inc.**, 347 F.3d. 1055 (8th Cir. 2003), the question was whether a choice of law provision in a contract applied to tort claims. The court held that if analysis of a tort claim connected to a contract involves interpretation of that contract, then the contract's choice-of-law provisions apply to the tort claim. **Id.** at 1061. In the case before it, analysis of tort claims of negligent misrepresentation required interpretation of the underlying contract for the design and construction of the subject of the alleged misrepresentations; hence, "in analyzing the tortious behavior [the court was] essentially analyzing the contract." **Id.** The choice-of-law provision applied. **Id.** And, in **Northwest Hamilton Lake Dev. Co. v. Am. Federal Inc.**, 2006 WL 381499, *10 (E.D. Mo 2006), the court held, without extensive discussion, that the plaintiff's conversion claim alleging that the defendant had improperly retained possession of a "commitment fee" was subject to the choice-of-law provision in the parties' commitment agreement.

In the instant case, section five of the Agreement governs audits and specifically provides for when, where, how, and how frequently the audits are to be conducted. (Am. Compl. Ex. A § 5.) This section will have to be analyzed when resolving Walgreen's conversion counterclaim, which is entirely based on Walgreen's allegations that Express Scripts engaged in a "claw back" scheme by conducting improper audits. Indeed, throughout this counterclaim, Walgreen refers to the Agreement provisions when describing Express

Scripts' alleged unauthorized audit conduct. Morever, the Agreement's extremely broad choice of law provision clearly encompasses the conversion claim because the tort claim arises directly out of the terms of the Agreement and the contractual relationship between the parties. Clearly, the Court cannot determine if money was converted through improper audits without determining from the Agreement which, if any, audits were permitted.

For the foregoing reasons, the choice-of-law provision in the Agreement applies to Walgreen's counterclaim for conversion.

Conversion Counterclaim. Under Missouri law, "'conversion may be proved in one of three ways: (1) by showing a tortious taking, (2) a use or appropriation by the defendant indicating a claim or right in opposition the owner, or (3) a refusal to give up possession on demand.'" **Envirotech, Inc. v. Thomas**, 259 S.W.3d 577, 592 (Mo. Ct. App. 2008) (quoting Bell v. Lafont Auto Sales, 85 S.W.3d 50, 54 (Mo. Ct. App. 2002)); accord **Capital Indem. Corp. v. Citizens Nat'l Bank of Ft. Scott, N.A.**, 8 S.W.3d 893, 899 (Mo. Ct. App. 2000). "[C]onversion generally is not a proper theory where the claim involves money, as opposed to a specific chattel." **Johnson v. GMAC Mortgage Corp.**, 162 S.W.3d 110, 125 (Mo. Ct. App. 2005). "'Specific checks, drafts or notes will support a cause of action for conversion where they can be described or identified as a specific chattel.'" **Capital Indem.**, 8 S.W.3d at 900 (quoting Dayton Constr., Inc. v. Meinhardt, 882 S.W.2d 206, 208-09 (Mo. Ct. App. 1994)). However, Missouri law includes "a 'narrow exception' in cases where the plaintiff delivers funds to the defendant for a specific purpose only to have the defendant divert those funds to another and different purpose of the defendant." **Id.** (citing Knight v. M.H. Siegfried Real Estate Inc., 647 S.W.2d 811, 817 (Mo. Ct. App. 1982)).

In arguing that the allegations in its counterclaim do state a claim for conversion, Walgreen cites several Missouri cases. An examination of those cases shows the citation to be unavailing. For instance, in **In re Estate of Boatwright**, 88 S.W.3d 500 (Mo. Ct. App. 2002), a seriously ill individual, Robert, executed a power of attorney for the sale of his real estate. **Id.** at 503. Robert's share of the proceeds totaled $62,288.50. **Id.** The individuals with the power of attorney placed the check into a joint account with Robert and then subsequently transferred $65,000 from that account into a separate account without Robert's name. **Id.** at 504. The conversion claim was permitted to proceed for the amount of the proceeds from the sale because the court found that Robert's estate had identified a specific chattel, i.e., the amount of the money constituting the proceeds from the sale. **Id.** at 507-08.

In **Scott v. Scott**, 157 S.W.3d 332 (Mo. Ct. App. 2005), a former wife refused to transfer stock awarded in a divorce decree to her former husband, sold some of the stock, and used those proceeds for her living expenses. **Id.** at 336-37. The appellate court found that she had converted the stock. **Id.** at 337. The trial court's ruling that she had to transfer the stock to her former husband was reversed on the grounds that she no longer owned all the stock. **Id.** The case was remanded for entry of a new order distributing the *remaining* stock and properly balancing the equities. **Id.** To support Walgreen's position, the former wife would also have had to transfer the proceeds, approximately $16,000, from the stock she did sell to her former husband. She did not.

Walgreen further argues that a case cited by Express Scripts, **Dillard v. Payne**, 615 S.W.2d 53 (Mo. Ct. App. 1981) (per curiam), supports its position. In that case, the plaintiff

had deposited $300 in a law firm's trust account for costs in a personal injury action. **Id.** at 54. The firm used $10 for costs, withdrew as the plaintiff's attorneys without having filed any legal action, and then refused to return to him the remaining $290. **Id.** Noting that "conversion does not ordinarily lie for money represented by a general debt," the court held that "the rule is otherwise as to funds *placed in the custody of another for a specific purpose* and their diversion for other than such specified purpose subjects the holder to liability in conversion." **Id.** at 55 (emphasis added). Thus, the plaintiff's allegations of placing funds in the custody of the law firm for a specific purpose and the subsequent diversion by the attorneys of those funds for their own use stated a claim for conversion. **Id.**

In each of these three cases, including **Dillard**, there is an identifiable chattel or draft – the proceeds from the sale of a specific piece of real estate; stocks (not the proceeds from the sale of some of the stock); and $300 deposited into a law firm's trust account. Conversely, in **Capital Indem.**, a construction company contracted with a city for road construction and secured a loan from the defendant bank. 8 S.W.3d at 896. The plaintiff issued a performance bond and payment bond for the project. **Id.** The city made its payment for the work of the construction company to the bank for deposit in a special account. **Id.** at 896-97. When the construction company found itself in financial trouble, the plaintiff demanded that the bank "tender back" the last two payments the city had placed in the special account; the bank refused; the plaintiff sued for conversion. **Id.** at 897. The court found that plaintiff failed to state a claim for conversion, holding that such cause of action did not exist because plaintiff identified its claim only as "certain progress payments" and

did not seek the return of any specific checks, but rather sought reimbursement under the construction company account. **Id.** at 900.

Similarly, in **Ottawa Charter Bus Serv., Inc. v. Mollet**, 790 S.W.2d 480 (Mo. Ct. App. 1990), an insured sued for conversion after its insurer refused to refund a $14,500 refund premium that had been applied to an insurance agent's negative balance on the insured's account. **Id.** at 482-83. The court held that no claim for conversion lay because the return of the premium constituted only a debt and not a misappropriation of a specific fund. **Id.** at 484. Finally, in **Anderson Elec. Car Co. v. Savings Trust Co.**, 212 S.W. 60 (Mo. Ct. App. 1919), the court held that a claim for conversion did not exist when the plaintiff sued a trust company for the amount of money the trust company had collected on three separate checks. **Id.** at 60. Such a cause of action did not lie "for money had and received for payment of debts, money being the subject of conversion only when it can be described or identified as a specific chattel." **Id.** By its nature, money passes by delivery and its identity is lost by being changed into other money or its equivalent. **Id.** The plaintiff's action was not for conversion of the checks but of the money collected on the checks; hence, there was no conversion. **Id.**

In the instant case, Walgreen alleges in its counterclaim that it agreed to provide certain services to Express Scripts, including dispensing medication to Express Scripts' members, collecting payments, maintaining records, and providing reasonable consulting services to the members about medications. (Countercl. ¶ 9.) Walgreen received money from Express Scripts for the costs of drugs, a dispensing fee to each pharmacy, and a credit

for payments collected by pharmacies. (Id. ¶ 18.)[5] The fees and amounts on deposit cannot be described as chattels, a draft, a check, or a note specific enough to support a conversion claim. Walgreen's counterclaim is a claim on a contract for monies allegedly owed to it by Express Scripts under the terms of their Agreement. Walgreen cannot, and does not, identify these funds as a specific chattel but rather seeks reimbursement on a debt or breach of the Agreement.

There is another problem with Walgreen's conversion counterclaim. Walgreen alleges that Express Scripts remitted payments to it twice monthly and seeks the amount of deductions allegedly improperly made from these payments. (See Id. ¶ 18.) Walgreen does not allege that specific funds were placed in the custody of Express Scripts for a specific purpose and then diverted by Express Scripts for its own use. Cf. **Perez v. Boatmen's Nat'l Bank of St. Louis**, 788 S.W.2d 296, 299 (Mo. Ct. App. 1990) (holding that an exception to the general rule that conversion does not lie for taking of money exists "when plaintiff places funds in the custody of defendant for a specific purpose and defendant diverts them to a different purpose"); accord **Hall v. W.L. Bradley Invs., Inc.**, 684 S.W.2d 379, 384 (Mo. Ct. App. 1984). Cf. also **Knight**, 647 S.W.2d at 816-17 (referring to the exception as "narrow").

Walgreen's allegations in its conversion counterclaim do not fall within the above-described narrow exception. Walgreen did not deliver any funds to Express Scripts for a specific purpose. Rather, according to the allegations, Walgreen provided services to

---

[5]These issues are also described in the section 2 of the Agreement, "Pharmacy Services," and section 3, "Provider Compensation."

Express Scripts pursuant to their Agreement and, instead of properly paying for those services and related expenses, Express Scripts improperly retained a portion of the money it owed Walgreen.

Because Walgreen has failed to state a cause of action for conversion,

**IT IS HEREBY ORDERED** that the motion of Express Scripts, Inc., to dismiss Count III of the counterclaim of Walgreen Co. is **GRANTED**.  [Doc. 56]

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 3rd  day of December, 2009.